**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| WILLIAM HENRY PITTMAN,     ) | |
|        ) | |
|     Plaintiff,    ) | |
|        ) | |
| v.       ) | CIVIL ACTION NO. |
|        ) | 12-00667-CB-M |
| LUTHER STRANGE, in his   ) | |

WILLIAM HENRY PITTMAN,  )
                        )
          Plaintiff,    )
                        )
v.                      )     CIVIL ACTION NO.
                        )     12-00667-CB-M
LUTHER STRANGE, in his  )
official capacity as Attorney )
General of the State of )
Alabama, and JOHN       )
RICHARDSON,[1] in his   )
official capacity as Acting )
Director of the Alabama )
Department of Public    )
Safety,                 )
                        )
          Defendants.   )

## ORDER

This matter is before the Court on a motion for judgment on the pleadings or, alternatively, motion for summary judgment, filed by the Defendants (Doc. 31), Plaintiff's response (Doc. 37) and Defendant's reply (Doc. 39).  After due consideration of all issues raised, the Court finds that the motion is due to be granted.

### I.  Factual & Procedural Background

Plaintiff William Henry Pittman is a convicted sex offender.  In 1989, Pittman pled guilty in the United States District Court for the Southern District of Mississippi

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, John Richardson, Acting Director of the Alabama Department of Public Safety has been substituted as an official capacity defendant in place of Hugh McCall, former Director of the Alabama Department of Public Safety.

to a Federal offense—Transportation of a Minor for Sexual Purposes.[2]  In 2002, Pittman moved to Alabama where he opened a small loan business, Cash-N-A-Dash. In January 2012, he was indicted in this district for failure to register as a sex offender, in violation of the Federal Sex Offender Registration and Notification Act (SORNA).  *See* Criminal No. 12-00014-CG-C, Doc. 1.  In June 2012, Pittman was also indicted on a charge of possession of a firearm by a convicted felon.  *See* Criminal No. 12-00155-WS-C.  Pittman pled guilty to the latter charge, and the failure-to-register charge was dismissed.  Pittman was sentenced to 10 months in prison. When he was released from prison in 2014, Pittman was forced to relocate his residence due to its proximity to a school.[3]  As a convicted sex offender, Pittman is subject to the requirements of the Alabama Sex Offender Registration and Community Notification Act (ASORCNA), Ala. Code §§ 15-20A-1, *et seq.* (1975, as amended).

In his complaint seeking declaratory judgment, Pittman challenged the constitutionality of ASORCNA.  Specifically, Plaintiff contested "the procedure used [by the Defendants] to determine the Plaintiff . . . to be a 'foreign jurisdiction convicted sex offender'" as well as "the Defendants' final determination that Pittman is non-compliant with Alabama's sex offender registry[,] administrative code and Alabama statute." (Compl. ¶ 1, Doc. 1.)  Defendants filed a motion to dismiss the complaint for failure to state a claim on which relief can be granted.  The Court

---

[2] Pittman devotes most of the "facts" section of his summary judgment response to his version of events that led him to plead guilty to the underlying offense, none of which is relevant to the legal issues presented in this case.

[3] Pittman argues throughout his brief that ASCORNA is punitive because it will also force him to relocate his business, but he has not explained this assertion. Apparently, the business remains in its original location.

granted the motion to dismiss as to Plaintiff's due process and equal protection claims but denied the motion as to Plaintiff's *ex post facto* challenge.

That claim, as set fort in the compliant, is:

[ ]  The Defendants are attempting to enforce a law which was enacted after Pittman's guilty plea in 1998.  The laws [sic] sought to be enforced by the Defendants were enacted after Pittman leased his business property in approximately 2001-2002.  It is an *ex post facto* law.  The question becomes is it a permissible *ex post facto* <u>application</u> of law?  The test of whether an *ex post facto* law is permissible is whether or not the <u>application</u> of the *ex post facto* law is punitive in nature versus a function of public safety.

[ ] Plaintiff can demonstrate <u>the application of the law to his specific set of facts is punitive</u>.  The <u>application</u> of law to Pittman will expose him to criminal prosecution for reported non-compliance.  Additionally <u>application</u> of the law by the Defendants will deprive Pittman's liberty and property to which he was rightfully entitled before the law's enactment.  Pittman acted in reliance on the law as it existed at the time he established his business and its location.  If an *ex post facto* law is <u>applied</u> in such a way as to be punitive in nature, then it is violations the [sic] the Constitution.  Mir. Pittman requests a trial on the merits in which he can present evidence of the punitive effect of the *ex post facto* law.

(Compl., ¶¶ 19-20, emphasis added.)  The Court interpreted Plaintiff's claim to assert only an 'as applied' *ex post facto* challenge to ASORCNA."  (Order at 11 n. 5, Doc. 14.)

In denying the motion to dismiss, this Court applied the Supreme Court's *ex post facto* analysis as set forth in *Smith v. Doe*, 538 U.S. 84 (2003), a case involving Alaska's sex offender notification act:

The first part of the Supreme Court's *ex post facto* analysis in *Smith* is purely legal.  Initially, the Court "'must ascertain whether the legislature meant the statute to establish civil proceedings.'" *Smith,* 538 U.S. at 92 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)).  Obviously, if the intent was punitive, then the *Ex Post Facto* Clause prohibits retroactive application.  *Id.* If the legislature intended to create "a regulatory scheme that is civil and nonpunitive," then the

> Court must determine whether the law is "so punitive in either
> purpose or effect" as to render it a criminal penalty. *Id.* The Supreme
> Court has cautioned that "'only the clearest proof will suffice to
> override legislative intent and transform what has been denominated
> a civil remedy into a criminal penalty.'" *Id.* (quoting *Hudson v. United
> States*, 522 U.S. 93, 100 (1997)) (internal quotations omitted).

(Order at 12.) Applying that first step of the *Smith* analysis, the Court concluded

that the Alabama Legislature's clear intent in enacting ASORCNA "was to create a

regulatory scheme to protect the public and promote child safety." (*Id.* at 13.) With

regard to the second step, the Court reasoned that "the inquiry also involves factual

determinations" because "[t]he existence of a burden of proof implies the

presentation of evidence." (*Id.* at 14.) At the initial pleading stage, the Court found

Plaintiff's complaint stated a plausible "as-applied" *ex post facto* claim based on the

assertion that ASORCNA's restrictions would require Plaintiff to move his home and

business.

## II. Issues Presented

Defendants seek judgment on the pleadings because, they argue, "the case for

outright dismissal of Pittman's ex post facto claim is far more compelling an the

Defendant's articulated in their short motion to dismiss." (Defs.' Br. 3, Doc. 34.) In

particular, Defendants point out, first that the factual component of the *ex post facto*

analysis must be viewed with great deference to the legislative intent and, second,

the facts to be considered are "legislative facts of which the Court may take judicial

notice." (*Id.*) Alternatively Defendants argue that summary judgment is appropriate

because the facts upon which Plaintiff relies do not satisfy the heavy burden of proof

necessary to transform a civil regulatory scheme into an *ex post facto* criminal

punishment.

In response, Plaintiff argues that the motion for judgment on the pleadings is due to be denied because the pleadings have not changed since the Court ruled on the motion to dismiss. With regard to the motion for summary judgment, Plaintiff says there is "[a] mountain of evidence" that proves "that the application of ASORCNA is punitive in effect so as to overcome the legislative label of 'non-punitive'." (Pl.'s Br. 6, Doc. 37.) Further, Plaintiff points out that this case is "an outlier. It presents such an unusual pattern of facts that a ruling in [Plaintiff]'s favor is almost certain not to open the door for cases to follow unless they have similarly unique circumstances." (*Id.* 6.)

As discussed below, the *ex post facto* claim Plaintiff asserted in his complaint is actually different from the *ex post facto* claim Plaintiff has argued in his summary judgment response. Judgment on the pleadings is due to be granted as to the former, and summary judgment is due to be granted as to the latter.[4]

## III. Standard of Review

### A. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings must be granted "when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).

---

[4] The Court does not address Defendants' argument that only "legislative facts" should be considered, judgment on the pleadings entered, and Plaintiff's evidence disregarded. Even when the facts proffered by Plaintiff are considered, the evidence is insufficient to overcome legislative intent to create a civil regulatory scheme.

### B. Motion for Summary Judgment

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are not genuine issues of material fact that should be decided at trial" *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *United States v. Four parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

"In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "However, we draw these inferences only "'to the extent supportable by the record.'" *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2002) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n. 8 (2007) (emphasis omitted)). Furthermore, "[a] dispute over a fact will only preclude summary judgment if the dispute "might affect

the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 US. 242, 248 (1986)).

## IV. ASCORNA

Effective July 1, 2011, Alabama replaced its prior sex offender registry law, the Alabama Community Notification Act (CNA), Ala. Code § 15-20-20, *et seq.* (1975), with the Alabama Sex Offender Registration and Community Notification Act (ASORCNA), Ala. Code § 15-20A-1, *et seq.* (1975, as amended). A person subject to ASORCNA must register as a sex offender with the Alabama Department of Public Safety (DPS), *id.* § 15-20A-7; must register with local law enforcement, pay a registration fee, and abide by certain reporting requirements, *id.* § 15-20A-10 & § 15-20A-22; is subject to residency, travel, and employment restrictions, *id.* §§ 15-20A-11, -13, & -15; and is subject to community notification requirements, *id.* § 15-20A-21. In addition, ASORCNA requires that the offender carry identification. *Id.* § 15-20A-18. Of particular significance in this case, an adult sex offender cannot establish or maintain a residence or maintain employment within 2,000 feet of a school. *Id.* §§ 15-20A-aa(a) (residence) & 15-20A-13(b) (employment). However, exceptions are possible in some instances. *Id.* § 15-20A-11(f)(residence) & § 15-20A-25(a) (employment). An "adult sex offender" (i.e. an adult who has been convicted of a sex offense) is subject to ASORCNA's requirements for life. Ala. Code §§ 15-20A-3(b), 15-20A-4(1).

## V. *Smith v. Doe* and the *Ex Post Facto* Analysis

The first step in the *ex post facto* analysis set out in *Smith* is not in dispute. Initially, the Court "'must ascertain whether the legislature meant the statue to

establish civil proceedings.'" *Smith,* 538 U.S. at 92 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). In the order addressing the motion to dismiss, this Court held: "The Alabama legislature's expressed intent was to create a civil regulatory scheme to protect the public and promote child safety." (Order at 13, Doc. 14.) Pittman concedes this point. (Pl.'s Br. 6, Doc. 37.) If the legislative intent "was to enact a regulatory scheme that is civil and nonpunitive," the inquiry "examines whether the statutory scheme is so punitive in either purpose or effect as to negate [the legislature's] intention to deem it civil." *Smith*, 538 U.S. at 97. As the Eleventh Circuit has recognized, "[this] second step is a steep one for those challenging a statute on these grounds . . . *only the clearest proof will suffice* to override legislative intent.'" *United States v. W.B.H.*, 664 F.3d 848, 853 (11th Cir. 2011 (quoting *Smith*, *id.* at 97 (emphasis added)). On summary judgment, Plaintiff argues that his evidence is sufficient to meet this burden. The claim Plaintiff actually pled in the complaint, however, is different. It would add a third level to the *ex post facto* analysis. That is, an otherwise civil regulatory scheme could be deemed *ex post facto* as applied to a single individual. The latter claim, which is clearly subject to judgment on the pleadings, is addressed first below.

### A. Plaintiff's "As-Applied" Ex Post Facto Challenge

The Supreme Court has flatly rejected the concept of an "as-applied" *ex post facto* challenge to a civil statute.[5] In *Seling v. Young*, 531 U.S. 250 (2001), the Court

---

[5] "The Constitution of the United States, article 1, . . . section 10, lays several restrictions on the authority of the Legislatures of the several states; and, among them, 'that no state shall pass any ex post facto law.'" *Calder v. Bull*, 3 U.S. 386, 389 (1789). An *ex post facto* law is one that makes criminal an act that was not criminal

examined an *ex post facto* challenge to Washington's State Community Protection Act, which provided for civil commitment of sexually violent predators. The Seling court reversed the Ninth Circuit's ruling that a complaint "alleging that [the Washington Act] was punitive as applied" stated a plausible claim for relief. *Id.* at 261. The Court recognized that "the civil nature of an Act cannot be determined "by reference to the effect that an Act has on a single individual." *Id.* at 262. Further "an 'as applied' analysis would prove unworkable. Such an analysis would never conclusively resolve whether a particular scheme is punitive and would thereby prevent a final determination of the scheme's validity under the Double Jeopardy or *Ex Post Facto* Clauses." *Id.* at 263. In ruling on the motion to dismiss, this Court held that the complaint stated a plausible claim for relief based on an "as-applied" *ex post facto* challenge. As *Seling* makes clear, that is wrong because no such claim exists.

The posture of this case is a bit different from that in *Seling*. In that case, the second step of the *ex post facto* analysis—whether the legislation was so punitive in effect as to render it a criminal penalty ("the effects test")—had already been decided in favor of the state. Consequently, the Act was indisputably civil, and the only issue before the Supreme Court was whether *application* of a civil regulatory scheme to an individual could constitute an *ex post facto* violation.[6] Plaintiff's summary judgment response appears to redefine his claim to address the second

when committed or increases the punishment for a previously committed offense. *Id.*

[6] The *Seling* court did not prohibit consideration of a statute's *effects* on a single individual as evidence of the act's overall punitive effect. In other words, such evidence may be considered in determining whether Plaintiff has proved "by clearest evidence " that ASORCNA is so punitive in effect as to override legislative intent to create a civil regulatory scheme. *Id.*

step—i.e., that ASORCNA is so punitive in "purpose or effect" as to render it a criminal penalty.[7]  Plaintiff presents evidence of the effect on him as part of his evidence that ASORCNA is so punitive overall as to render the statute (as opposed to the individual application of the statute) an *ex post facto* violation.

### B.  Plaintiff's Attempt to Prove ASORCNA's Punitive Effect

In *Smith*, the Court articulated the framework for determining whether a civil statute has a sufficiently punitive effect to overcome legislative intent:

> In analyzing the effects of the Act we refer to the seven factors noted in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as a useful framework. These factors, which migrated into our ex post facto case law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the Ex Post Facto Clauses. Because the *Mendoza–Martinez* factors are designed to apply in various constitutional contexts, we have said they are "neither exhaustive nor dispositive," but are "useful guideposts." The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Id.* at 97 (internal citations omitted).  Furthermore, as previously noted, "only the 'clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  *Id.* at 92 (internal citations omitted).  As the Eleventh Circuit said in *W.B.H.,* "[w]e take the Court at its word:  some evidence will not do; substantial evidence will not do; and a

---

[7] Plaintiff's argument, however, conflates two distinct principles:  Punitive effect and punitive application.  The former, if proved "by the clearest evidence," may render a civil statute an *ex post facto* violation.  *Smith*, 538 U.S. at 92.  The latter will not.  *Seling*, 531 U.S. at 263.

preponderance of the evidence will not do. '[O]nly the clearest proof' will do."
*W.B.H.*, 664 F.3d at 855 (quoting *Smith, id.* at 97). It is a heavy burden, indeed, and one that Plaintiff's evidence does not come close to satisfying.

### 1. Historically Regarded as Punishment

Pittman argues that some aspects of ASORCNA are like traditional forms of punishment. First, Pitman asserts ASORCNA travel restrictions and registration requirements amount to punishment based on his own experience, to wit: "'I have been to prison … and been on probation. I know what it feels like to be punished [and] . . . [ASORCNA's requirements] are identical to being on supervised probation.'" (Pl.'s Br. 12, quoting Pl.'s Aff.) But "feels like punishment" is not persuasive evidence, or even persuasive argument, that ASORCNA's restrictions have been considered punishment throughout history. In *Smith* the Supreme Court recognized "some force" to the argument that a registration system was akin to supervised release, but ultimately rejected it. AS the Court pointed out, there is a difference between actions that must be reported (such as ASORCNA's requirement that travel plans be *reported* to authorities in advance) but do not restrict movement and "[p]robation and supervised release which entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction." *Smith* 538 U.S. at 101.

Pittman also likens aspects of ASORCNA to public shaming, a historical form of punishment. The Act requires that a convicted sex offender "obtain, and always have in his or her possession," "a driver's license or identification card bearing a designation that enables law enforcement to identify the licenses as a sex offender." Ala. Code § 15-20A-18(a), (d) (1975, as amended). Pursuant to this statute, the Alabama Department of Public Safety has issued Pittman a driver's license bearing the words "Criminal Sex Offender" in red letters.

Pittman feels "'shamed and embarrassed'" whenever he is required to show his driver's license. (Pl.'s Br. at 12, quoting Pl.'s Aff.) Further Pittman points to the embarrassing effects of the Act's notification requirement, stating: "'My landlord told me that because I was a sex offender and the neighbors complained, he intended to periodically enter the rental house I was living in to . . . make sure I was not doing anything wrong.'" (*Id.*)

As the *Smith* court pointed out, however, early forms of punishment such as public shaming, humiliation, and banishment involved more than the dissemination of information." *Smith*, 538 U.S. at 98. The practice of public shaming meant holding a person up for pubic ridicule. *Id.* "By contrast, the stigma of [sex offender notification laws] results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." *Id.* Furthermore, making information public is not transformed into "public shaming" simply because the offender feels shame and embarrassment.

### 2. *Affirmative Disability or Restraint*

In a recent unpublished opinion upholding ASORCNA, the Eleventh Circuit discussed the application of this factor as follows:

> As for whether ASORCNA imposes an affirmative disability or restraint, this factor does not tip the balance in favor of [the plaintiff]. In analyzing this issue, we must keep in mind that "[i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive." As a result we've found no punitive restraining effect even where the federal Sex Offender Registration and Notification Act ("SORNA") required in-person reporting and mandated dissemination on the internet of information regarding the whereabouts of convicted sex offenders. We said that "[a]ppearing in person may be more inconvenient, but requiring it is not punitive." We also recognized that [a]lthough the public availability of information may have a lasting and painful impact on the convicted sex offender, these consequences flow not form the Act's registration and dissemination

provisions, but from the fact of conviction, already a matter of public record." *To the extent ASORCNA imposes additional burdens, we still fail to find it punitive.*

*Windwalker v. Governor of Alabama, et al.*, No 13-11279, 2014 WL 4290604, *2 (11th

Cir. Sept. 2, 2014 (Internal citations omitted) (emphasis added).  Because

*Windwalker* is an published opinion, it is not dispositive.  *See* 11th Cir. Rule 36-2.  It

is, however, persuasive, even with respect to those "additional burdens" about

which Pittman complains, such as being required to carry identification, to have his

photograph taken annually, and to not reside near a school.  These are

"inconveniences" which "'do[ ] not resemble the punishment of imprisonment ... the

paradigmatic affirmative disability or restraint.'"  *United States v. Under Seal*, 709

F.3d, 265 (4th Cir. 2013) (quoting *Smith*, 538 U.S. at 100).

### 3.  Promotes Traditional Aims of Punishment

"[T]he traditional aims of punishment ... [are] retribution and

deterrence."  *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168 (1963).  Pittman

points out that ASORCNA's legislative findings list deterrence as one of the aims of

the statute.  Those findings state, in relevant part:

> Registration and notification laws are a vital concern as the number of sex offenders continues to rise. The increasing numbers coupled with the danger of recidivism place society at risk. Registration and notification laws strive to reduce these dangers by increasing public safety and mandating the release of certain information to the public. This release of information creates better awareness and informs the public of the presence of sex offenders in the community, thereby enabling the public to take action to protect themselves. *Registration and notification laws aid in public awareness and not only protect the community but serve to deter sex offenders from future crimes through frequent in-person registration.* Frequent in-person registration maintains constant contact between sex offenders and law enforcement, providing law enforcement with priceless tools to aid

them in their investigations including obtaining information for
identifying, monitoring, and tracking sex offenders.

Ala. Code § 15-20A-2(1) (emphasis added).  The statute acknowledges a known

fact, i.e., "[m]ost civil regulatory schemes have some deterrent effect."  *Smith*, 538

U.S. at 102.  "'To hold that the mere presence of a deterrent purpose renders such

sanctions 'criminal' . . . would severely undermine the Government's ability o

engage in effective regulation."  *Id.*

Similarly, a statute's *incidental* retributive effect does not weigh in favor of

finding the statute punitive.  As the Eighth Circuit held in *Doe v. Miller*, 405 F.3d 700

(8th Cir. 2005), retributive effect "reasonably related to" and "consistent with the

regulatory objective" is permissible and "[w]hile any restraint or requirement

imposed on those who commit crimes is at least potentially retributive in effect, we

believe that [the residency restrictions imposed on convicted sex offenders by Iowa

law] like the registration requirement in *Smith v. Doe*, 8s consistent with the

legislature's regulatory objective of protecting the health and safety of children."

*Id.* at 720.

Pittman asserts that ASORCNA is retributive because he "lives in fear of his

neighbors' wrath and landlord's invasion of privacy."  (Pl.'s Br. 14.)  Pittman's

subjective fear of retribution is not evidence of retributive effect.  Moreover, even if

the actions Pittman fears had occurred, incidental effects of the law are not

considered.  *See Doe v. Pataki*, 120 F.3d 1263, 1279 (2nd Cir. 1997) ("unfortunate

incidents that have occurred in the aftermath of notification" are not attributable to

the law but to private third parties"); *E. B. v. Verniero*, 119 F.3d 1077, 1104 (3d Cir.

1997) (increased risk of private violence "understandably of concern to plaintiffs" but risk not great enough to amount to punishment).

### 4. *Rational Connection to a Nonpunitive Purpose*

The Supreme Court has said that this factor—a statute's rational connection to a nonpunitive purpose—"is a [m]ost significant factor" in determining whether the statute's effects are punitive. *Smith*, 538 U.S. at 102. Pittman's argument with respect to this factor is narrowly focused on one specific ASORCNA requirement, that is, that the "criminal sex offender designation be printed on his driver's license. He argues that the only purpose of this provision is to shame him when he uses his identification "at stores, restaurants, doctor's visits and the like." (Pl.'s Br. 16.) "The requirement of a 'rational connection' is not demanding: A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance.'" *Windwalker*, 2014 WL 4290605 at *2 (quoting *Smith, id.*). Like sex offender notification and residency requirements reviewed by other courts, ASORCNA, overall, advances "a legitimate nonpunitive purpose of 'public safety . . . by alerting the public to the risk of sex offenders in their community." *Smith, id.* at 103 (quoting *Ursery v. $405,089.23 in United States Currency*, 518 U.S. 267, 290 (1996)); *see also Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007) (finding rational connections between residency restrictions and aim of protecting public from sex offenders who, as a group, have a high rate of recidivism); *Doe v. Miller* , 405 F.3d 700, 721 (8th Cir. 2005) (reasonable to conclude that law imposing sex offender residency restrictions "would protect society by minimizing the risk of repeated sex offenses against minors"). Although

the driver's license "sex offender" notation may be a loose fit with ASORCNA's public safety purpose, it nonetheless has a rational connection. As Defendants point out the notation allows law enforcement to determine a person's status quickly and easily, and it may be of particular use when computer-based information is not readily accessible.

### 5. Excessiveness With Respect to Nonpunitive Purpose

Pittman contends that ASORCNA is excessive with respect to its public safety purpose for two reasons. First, he argues that the lifetime registration requirement is excessive in view of the type of offense for which he was convicted. However, "the Supreme Court has already permitted sex offenders to be regulated as a class regardless of individualized risk assessment." *Windwalker*, 2014 WL 4290604 at *3. Next, he states that "having to move his home and business is excessive." (Pl.'s Br. 17.) While the statute might be considered excessive in the Court's judgment if it *mandated* relocation of a sex offender's home prohibited his continued employment, ASORCNA does not do that.[8] Instead, it provides exceptions in certain situations. The residency restriction includes a "grandfather" clause that allows offenders to maintain their residence while incarcerated. *See* Ala. Code § 15-20A-11(f). Relief rom employment restrictions is available pursuant to § 15-20A-25, which states: "A sex offender may petition the circuit court in the county where the offender seeks to accept or maintain employment for relief from

---

[8] The evidence provided does not clearly explain Pittman's residence and employment situation. Pittman has moved from his Outley Drive residence and, according to Defendants, was required to do so because of his felon-in-possession conviction. Defendants say that had it not been for that conviction, Pittman could have maintained his residence. Pitman apparently has not been required to relocate his business.

the employment restrictions of [§15-20A-13] [unless the offender was convicted of certain enumerated sex offenses]." Ala Code § 15-20A-25(a).  In summary, the Court is not persuaded that ASORCNA's residency and employment restrictions are excessive.  Even if those restrictions were excessive, this single factor would not be sufficient to override the legislature's intent.

### 6. Other Factors

Pointing out that the *Smith v. Doe* factors are not exclusive, Pittman urges the Court to consider other "useful guideposts."  Pittman relies on two state supreme court cases to introduce these additional guideposts. However, those courts were applying more favorable state *ex post facto* laws.  In *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 430 Md. 535, 62 A.3d 123 (Md. 2013), the Maryland Supreme Court held that the state's sex offender registry law violated the prohibition on *ex post facto* laws contained in the Maryland constitution.  In so doing, the court specifically declined to follow *Smith v. Doe*, stating:  "We are persuaded, in the present case, to follow our long-standing interpretation of the x*e post facto* prohibition and depart from the approach taken by the United States Supreme Court when it analyzed the Alaskan sex offender registration statute in *Smith v. Doe*."  *Id.*, 430 Md. at 550, 62 A.3d at 132.  In *Gonzalez v. State*, 980 N.E.2d 321 (Ind. 2013), the Indiana Supreme Court applied the same guideposts set forth in Federal law to its *ex post facto* review under the state constitution.  But the court recognized one important difference:  "While Indiana courts have adopted an approach consistent with the federal standard through use of the intent-effects test, . . . 'Indiana does not use the heightened standard of clearest proof ... as used by the

United States Supreme Court. ... Thus, our analysis under the intent-effects test is independent from that of the federal standard." *Id.* at 316 n. 2 (internal citations omitted). These cases are of no value in deciding the applicability of Federal constitutional law.[9]

## VI. Conclusion

Plaintiff's summary judgment response does not demonstrate by a preponderance of evidence, much less by "the clearest proof," that ASORCNA is so punitive in effect as to override legislative intent to create a civil regulatory scheme. For that reason, the motion for summary judgment is **GRANTED**. Furthermore, the motion for judgment on the pleadings is **GRANTED** as to Plaintiff's "as-applied" *ex post facto* challenge. Defendant's motion for oral argument (Doc. 40) is **moot**.

**DONE** and **ORDERED** this the 22nd day of September, 2014.

**s/***Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[9] Furthermore, the "other useful guideposts" Plaintiff has gleaned from these cases have little relevance here. Two of those factors—whether the sanction applies to behavior that is already a crime and whether it comes into play only on a finding of scienter—are factors that the *Smith* court found not to be relevant. *Smith*, 538 U.S. at 97 (applying "most relevant" *Mendoza-Martinez* factors). Plaintiff admits that the final "guidepost" he proffers—the availability of meaningful review of an offender's future dangerousness—can also be considered under the "excessiveness" factor.